UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVE W. CARGILL, | No. 2:16-cv-949-KJN |
| Plaintiff, | |
| v. | ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff Steven W. Cargill seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act").[1] In his motion for summary judgment, plaintiff principally argues that the ALJ's decision is based upon reversible legal error and not supported by substantial evidence. (ECF No. 12.) The Commissioner opposed plaintiff's motion and filed a cross-motion for summary judgment. (ECF No. 13.)

After carefully considering the record and the parties' briefing, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion for summary judgment, and AFFIRMS the Commissioner's final decision.

---

[1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15).

1

I.  BACKGROUND

Plaintiff was born on September 1, 1966, and has neither graduated high school nor received a GED.[2]  (Administrative Transcript ("AT") 55–56.)  On August 27, 2012, plaintiff applied for DIB, alleging that his disability began on August 27, 2012.  (AT 8, 173.)  Plaintiff claimed that he was disabled due to right foot pain, lower back pain, depression, mental and emotional problems, high blood pressure, right calf pain post surgery, and insomnia.  (AT 57, 91.)  After plaintiff's application was denied initially and on reconsideration, an ALJ conducted a hearing on June 19, 2014.  (AT 48–90.)  Plaintiff was represented by counsel, and testimony was given by plaintiff and Thomas Leon Sartoris, a vocational expert ("VE").  (See Id.)  The ALJ subsequently issued a decision dated August 26, 2014, determining that plaintiff had not been under a disability as defined in the Act, from August 27, 2012, through the date of the ALJ's decision.  (AT 19–38.)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on March 18, 2016.  (AT 1–3.)  Plaintiff filed this action on May 4, 2016, to obtain judicial review of the Commissioner's final decision.  (ECF No. 1.)

II.  ISSUES PRESENTED

On appeal, plaintiff raises the following issues:  (1) whether the ALJ improperly evaluated the medical opinions from plaintiff's physicians; (2) whether the ALJ erred by failing to consider alleged limitations caused by plaintiff's insomnia; and (3) whether the ALJ failed to make a proper step three determination regarding the listing of impairments.[3]

////

////

////

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[3] Plaintiff's opening brief raises the issues in a somewhat different order.

III. LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV. DISCUSSION

    A. Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to DIB pursuant to the Commissioner's standard five-step analytical framework.[4] Preliminarily, the ALJ determined that plaintiff meets the

---

[4] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing her past relevant work? If so, the

3

insured status requirements of the Act through March 31, 2017. (AT 21.) At step one, the ALJ concluded that plaintiff has not engaged in substantial gainful activity since August 27, 2012, the alleged onset date. (Id.) At step two, the ALJ found that plaintiff "has the following severe impairments: Right Achilles tendon injury and status post surgical repair, degenerative and disc herniations of the lumbar spine, obesity, depression, and alcohol abuse." (Id.) However, at step three the ALJ concluded that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AT 22.)

Before proceeding to step four, the ALJ assessed plaintiff's RFC, finding that plaintiff could perform light work as defined in 20 C.F.R. § 404.1567(b), except that plaintiff:

> can stand/walk two hours in an eight-hour workday and sit six hours in an eight-hour workday, with normal breaks; he requires a cane for periods of long ambulation and uneven terrain; he is precluded from climbing ladders, ropes, scaffolds, ramps, and stairs; he can balance and kneel frequently; he can stoop and crouch occasionally; he cannot crawl; he is limited to work which is simple, defined in the DOT as SVP levels 1 and 2 in the DOT, which consist of routine and repetitive tasks, with only occasional changes in the work setting; he can have occasional interaction with the general public, coworkers, and supervisors.

(AT 23.) At step four, the ALJ determined that plaintiff is unable to perform any past relevant work. (AT 36.) However, at step five, the ALJ found that, in light of plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform. (AT 37.)

////

---

claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

4

Thus, the ALJ concluded that plaintiff "has not been under a disability, as defined in the Social Security Act, since August 23, 2012." (AT 19.)

B. Plaintiff's Substantive Challenges to the Commissioner's Determinations

1. *Whether the ALJ improperly evaluated the medical opinions from plaintiff's physicians*

Plaintiff alleges that the ALJ improperly rejected portions of the opinions of George Lin, D.O. and Paul Sandhu, M.D. (ECF No. 12 at 14–19.) The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. Holohan, 246 F.3d at 1202.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 830-31. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[5] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally

---

[5] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization. 20 C.F.R. § 404.1527.

5

supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

i. Nonexertional Limitations (Dr. Lin)

The ALJ gave "great weight to Dr. Lin's opinion that [plaintiff] could stand/walk two hours in an eight-hour workday . . . [and] little weight to Dr. Lin's opinion regarding [plaintiff's] nonexertional capabilities, including [his] need to take a break every hour." (AT 34.)

Plaintiff argues that the ALJ failed to provide specific and legitimate reasons to reject Dr. Lin's opinion regarding plaintiff's nonexertional capabilities. (ECF No. 12 at 17.) However, the ALJ explained that he gave little weight to this opinion because Dr. Lin "stated that [plaintiff's] emotional factors contributed to the severity of his symptoms and functional limitations. However, Dr. Lin failed to mention [plaintiff's] alcohol consumption, and its impact on [his] emotional factors," while continuing to prescribe plaintiff narcotic pain medication. (AT 34.) The ALJ further observed:

> It does not appear that the treating physicians who prescribed pain medication were entirely aware of the extent of the claimant's alcohol consumption. . . . Dr. Rockers advised [plaintiff] in January 2012 to reduce his alcoholic intake during his recovery, but it appears that [plaintiff] did not do so, as Dr. Sandhu noted in September 2013 that [plaintiff] was drinking 30 to 60 beers a week. Dr. Allen noted that [plaintiff's] alcohol consumption probably perpetuated his symptoms. Dr. Lin stated that emotional factors contributed to the severity of the claimant's symptoms and functional limitations.

(AT 30–31.)

The ALJ's conclusion that Dr. Lin failed to appropriately consider the impact of plaintiff's drinking on his nonexertional limitations is supported by substantial evidence in the record. In his psychological progress notes from February 12, 2012, Daniel Rockers, Ph.D. recorded that plaintiff "noted drinking 6 beers per day, and has done so since he was young. I noted how the alcohol is problematic for his recovery." (AT 458.) Dr. Rockers also educated plaintiff "regarding the use of alcohol and the negative effects that it has with respect to depression." (AT 453.) During a September 3, 2013 examination, plaintiff informed Dr. Sandhu

6

that he drinks between six and twelve cans of beer per day, approximately five times a week. (AT 1009, 1036.) Subsequently, on November 4, 2011, consultative psychiatrist Ann E. Allen, M.D. opined that

> His habits are concerning, he reports daily drinking beer, 6 to 12 beers a day. Also, this is concerning given the fact that he takes Norco medication. Chronic use of alcohol can affect mood as well and probably perpetuates his symptoms.

(AT 1076.) Based upon the evidence in the record, the ALJ appropriately resolved the conflict he found between Dr. Lin's opinion and the findings of other examining physicians. See Andrews, 53 F.3d at 1041. Therefore, the ALJ gave specific and legitimate reasons, supported by substantial evidence, to discount the nonexertional limitations opined by Dr. Lin.

### ii. Standing/Walking Limitations (Dr. Lin)

Plaintiff further argues that the ALJ erred by giving "great weight" to exertional limitations opined by Dr. Lin, but then misstating those limitations in the RFC determination. (ECF No. 12 at 17.) Specifically, plaintiff asserts that the ALJ misstated that Dr. Lin opined "[plaintiff] could stand/walk two hours in an eight-hour work day" (AT 34), when Dr. Lin actually opined that plaintiff could stand and walk less than two hours in an eight-hour work day. (ECF No. 12 at 17.)

An RFC "is the most [one] can still do despite [his or her] limitations" and it is "based on all the relevant evidence in [one's] case record," rather than a single medical opinion or piece of evidence. 20 C.F.R. § 404.1545(a)(1). "It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) (citing 20 C.F.R. § 404.1545). Furthermore, the ALJ is responsible for "resolving conflicts in medical testimony[ ]and resolving ambiguities." Edlund, 253 F.3d at 1156.

On November, 23, 2013, in a physical RFC questionnaire, Dr. Lin checked the box indicating that plaintiff can stand and walk less than two hours a day. (AT 841.) However, as the Commissioner points out, "Dr. Lin repeatedly opined that [p]laintiff could stand or walk for no more than two hours a day . . . [and w]ithin the November 2013 opinion, there is no justification

7

for Dr. Lin's deviation from his other opinion[s]." (ECF No. 13 at 10; see AT 779, 783, 793, 1058, 1093.) Here, the ALJ appropriately determined plaintiff's RFC based upon the entire record and resolved the conflict and ambiguity among Dr. Lin's opinions, when he relied on the majority of Dr. Lin's findings rather than a single outlying questionnaire. See Vertigan, 260 F.3d at 1049; Edlund, 253 F.3d at 1156.

                    iii.        Exertional Limitations (Dr. Lin and Dr. Sandhu)

Plaintiff argues that the ALJ "did not address Dr. Lin's assessments that [p]laintiff is limited to sitting about four hours in a work day and can lift twenty pounds only on rare occasions." (EFC No. 12 at 18.) In addition, plaintiff asserts that the ALJ did not "address Dr. Sandhu's lifting limitations or those that precluded squatting, kneeling, crawling, or crouching. . . [or] that [plaintiff] requires five minute breaks after every hour standing." (Id. at 19.)

However, the ALJ considered both Dr. Lin's and Dr. Sandhu's assessments because he described each doctor's treatment and opinions in detail. (See AT 25–26, 28–31, 33, 35.) The ALJ specifically noted that "Dr. Sandhu's recommendations that [plaintiff] receive a five-minute break after two hours of sitting can be accommodated with normal breaks." (AT 35.) Additionally, he rejected the specific limitations listed by Dr. Lin when he gave great weight to the opinion of the state agency medical consultant P.A. Talcherkar, M.D. that plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; stand/walk two hours in eight; and sit six hours in eight. (AT 35.) The ALJ concluded that Dr. Talcherkar's opinion is consistent with the evidence as a whole. (Id.)

Furthermore, the ALJ relied on numerous examinations performed by plaintiff's physicians, which he cited throughout his decision. On February 28, 2013, Dr. Mehta noted tenderness in plaintiff's lumbar spine with range of motion 75% of normal. (AT 27, 691.) On June 12, 2013, Dr. Lin's objective examination revealed that plaintiff had 5/5 motor strength throughout, with the exception of 5- in the left quadriceps, 5- in the right EHL and tibialis anterior, and 4- in the right gastroc/soleus complex, and only mild swelling in the right foot and ankle. (See AT 25, 799, 801.) Subsequently, on September 3, 2013, Dr. Sandhu observed that plaintiff "was able to sit in apparent comfort for two hours and apply force" during the

examination. (AT 26, 1023.) Importantly, Dr. Sandhu performed an isometric static strength test on plaintiff's upper body that demonstrated "a highest mean of 30 pounds for a left-hand lift, and 40 pounds for a right-hand lift." (AT 26, 1020.)

On September 6, 2013, Dr. Sandhu performed a electrodiagnostic nerve conduction study of plaintiff's lower extremities. (AT 889–90.) Dr. Sandhu observed that plaintiff

> has no evidence of a lumbar or sacral plexopathy or radiculopathy, and the abnormalities noted in the lower extremities are diffuse and involve the sensory and motor nerves. These are not corroborated by findings on physical examination and may represent a low-grade metabolic disease process or other entity.

(AT 890.) The ALJ reasonably explained that "[t]hese findings suggested the presence of a metabolic or other disease process rather than an entrapment neuropathy involving the nerves in the [l]ower extremities." (AT 26.) The ALJ also noted the July 8, 2013 MRI of plaintiff's lumbar spine, which showed mild findings. (See AT 27–28, 749–50.)

Additionally, the ALJ relied on the objective findings of James Wang, M.D. (AT 26, 34.) On May 14, 2014, Dr. Wang took over plaintiff's care from Dr. Lin. (AT 26, 1040.) After examining plaintiff, Dr. Wang observed normal range of motion in plaintiff's right ankle; normal range of motion in his lumbar spine; 5/5 motor strength throughout; no edema; no tenderness to palpation; and no visible surgical scars. (AT 1040–45.)

These objective findings demonstrate consistent progress in plaintiff's objective findings and constitute substantial evidence to support the ALJ's conclusion that Dr. Talcherkar opined appropriate exertional limitations.

iv. Improper Evidence (Dr. Sandhu)

Plaintiff also asserts that the ALJ used improper sources of evidence to reject Dr. Sandhu's opinions. (ECF No. 12 at 19.) Specifically, plaintiff takes issue with the ALJ's determination that "[a] limited ability to sit is not consistent with Dr. Hoenig's observation that [plaintiff] sat comfortably during the examination, or with [plaintiff's] behavior during the hearing." (AT 35.)

First, the ALJ's determination regarding Dr. Hoenig is supported by substantial evidence. During a physical examination on February 26, 2013, Dr. Honeig observed that plaintiff "is able

to walk into the examination room without assistance. He sits comfortably through the examination. He can get on and off the examination table." (AT 672.) Moreover, while the ALJ gave little weight to Dr. Honeig's opinion, he did so because Dr. Hoenig did not "have the opportunity to review all of the treatment records." (AT 34.) The ALJ did not question Dr. Hoenig's objective findings, and it was proper to rely on those as substantial evidence.

Second, the ALJ did not err when he relied on his observations of plaintiff at the hearing because the ALJ provided several other reasons for his decision. Still, even assuming that such reliance was error, it was harmless. See <u>Curry v. Sullivan</u>, 925 F.2d 1127, 1129 (9th Cir.1990) (harmless error analysis applicable in judicial review of social security cases); <u>Molina v. Astrue</u>, 674 F.3d 1104, 1111 (9th Cir. 2012) ("we may not reverse an ALJ's decision on account of an error that is harmless"). As explained above, the ALJ's determinations regarding plaintiff's limitations are supported by substantial evidence, even without crediting the ALJ's observations.

Therefore, the ALJ did not err when he evaluated the medical opinions from plaintiff's physicians because he provided several specific and legitimate reasons for discounting portions of both Dr. Lin's and Dr. Sandhu's opinions. Additionally, based upon the foregoing, the ALJ's RFC determination is supported by substantial evidence in the record.

2. *Whether the ALJ erred by failing to consider alleged limitations caused by plaintiff's insomnia.*

Plaintiff argues that "Dr. Cayton's comprehensive QME report is sound evidence that [his] insomnia is a medically determinable impairment," and that the ALJ erred by failing to consider it at step two, or while making his RFC determination. (ECF No. 12 at 21.)

Under the Commissioner's regulations, an impairment or combination of impairments is deemed to be severe at step two if it "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 404.1521(a). As the Ninth Circuit Court of Appeals has explained, "the step-two inquiry is a de minimis screening device to dispose of groundless claims. An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." <u>Smolen v. Chater</u>, 80 F.3d 1273, 1290 (9th Cir. 1996) (internal

citations and quotation marks omitted).

In this case, the ALJ did not ignore plaintiff's insomnia at step two. Indeed, the ALJ noted that "Dr. Cayton stated that hypertension and insomnia did not preclude a return to [plaintiff's] previous work." (AT 21.) This conclusion is supported by substantial evidence because Dr. Cayton determined that plaintiff's insomnia had "not caused a period of temporary total disability." (AT 867.)

Yet, even assuming, without deciding, that the ALJ technically erred by not finding plaintiff's insomnia impairment severe for purposes of step two, such error was harmless. See Curry, 925 F.2d at 1129; Molina, 674 F.3d at 1111. Here, because the ALJ found another mental impairment to be severe at step two—depression—the ALJ proceeded to subsequent steps of the sequential disability evaluation process. (AT 21.) Accordingly, the court finds no prejudicial error at step two.

Moreover, contrary to plaintiff's argument, the ALJ considered plaintiff's insomnia again when crafting the RFC determination. When discussing plaintiff's mental impairments, the ALJ specifically noted that plaintiff "complained of difficulty sleeping." (AT 28.) Further, as explained above, the RFC determination is based upon substantial evidence. Thus, the ALJ did not fail to consider the alleged limitations caused by plaintiff's insomnia.

3. *Whether the ALJ failed to make a proper step three determination regarding the listing of impairments*

Plaintiff alleges that the ALJ failed to properly consider if plaintiff's ankle impairments meet or medically equal a listed impairment at step three. (ECF No. 12 at 8.) Specifically, plaintiff alleges that "the ALJ's step three finding is a bare conclusion, which is not supported by substantial evidence." (Id. at 9.)

The claimant "bears the burden of proving that . . . she has an impairment that meets or equals the criteria of an impairment listed in Appendix 1 of the Commissioner's regulations." Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify. . . . For a

11

claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." Sullivan v. Zebley, 493 U.S. 521, 530-31 (1990). A determination of medical equivalence must rest on objective medical evidence. See Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001) ("A finding of equivalence must be based on medical evidence only."); Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999) ("Medical equivalence must be based on medical findings. . . . A generalized assertion of functional problems is not enough to establish disability at step three."); 20 C.F.R. § 404.1529(d)(3) ("In considering whether your symptoms, signs, and laboratory findings are medically equal to the symptoms, signs, and laboratory findings of a listed impairment, we will look to see whether your symptoms, signs, and laboratory findings are at least equal in severity to the listed criteria. However, we will not substitute your allegations of pain or other symptoms for a missing or deficient sign or laboratory finding to raise the severity of your impairment(s) to that of a listed impairment."). Furthermore, "[t]he mere diagnosis of an impairment listed in Appendix 1 is not sufficient to sustain a finding of disability." Key v. Heckler, 754 F.2d 1545, 1549 (9th Cir. 1985). Instead, all of the specified medical criteria must be met or equaled. Id. at 1550.

Here, the ALJ determined that plaintiff failed to sufficiently demonstrate an impairment at step three because plaintiff's "right ankle injury has not resulted in an [in]ability to ambulate effectively[6] as required by listings 1.02 and 1.03. The claimant requires only a single point cane."

---

[6] While the ALJ wrote "ability in ambulate effectively," it is clear from the context that this was a mistake, as the key phrase at issue in the listings is "inability to ambulate effectively:"

> 1.02 Major dysfunction of a joint(s) (due to any cause) . . . . With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b. . . .
>
> 1.03 Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint, with inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset.

(AT 22.) It is undisputed that the record supports the ALJ's conclusion that plaintiff only requires the use of a single point cane. (See AT 779, 783, 793, 1101.) Still, plaintiff argues that his use of only a single point cane is an insufficient basis for the ALJ's step three finding. This argument is not well taken. Plaintiff has the burden of proof to demonstrate a severe impairment at step three that meets or medically equals a listed impairment. See Burch, 400 F.3d at 683. Yet, plaintiff's disagreement with the ALJ's conclusions does not prove that his ankle impairment meets or medically equals the regulatory listings. Moreover, the ALJ's conclusion is well founded and supported by substantial evidence.

First, the Social Security Administration has clarified that the use of a single point cane to ambulate is not de facto evidence that the individual is unable to ambulate effectively:

> In response to public comments, we added "the inability to walk without the use of a walker, two crutches or two canes" as one example of an inability to ambulate effectively. . . . [W]e do not consider required use of one cane or crutch to automatically exclude all gainful activity.

Revised Medical Criteria for Determination of Disability, Musculoskeletal System and Related Criteria, 66 Fed. Reg. 58009, 58013 (Nov. 19, 2001).

Second, courts have determined that unless a plaintiff is required to use two canes, or other devices, that limit the functioning of both of his upper extremities, he cannot demonstrate the inability to effectively ambulate as defined in the listings. See Huizar v. Astrue, No. CV 11-7246-PLA, 2012 WL 3631526, at *7 (C.D. Cal. Aug. 23, 2012) ("Plaintiff does not assert—nor is there any evidence in the record to support an assertion—that in order to ambulate at all, she requires two canes, or any other assistive device that limits the functioning of both upper extremities. Thus, plaintiff has not shown that she meets Listing 1.04C."); Hedglin v. Astrue, No. 3:10-CV-05551-KLS, 2011 WL 2462222, *6 ("[T]he medical evidence in the record fails to show plaintiff's hip impairment met or medically equals the criteria of Listing 1.02. Namely, that evidence fails to establish she ambulates ineffectively, i.e., that she has 'insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held

---

20 C.F.R. § Pt. 404, Subpt. P, App. 1, 1.02, 1.03.

assistive device(s) that limits the functioning of both upper extremities.'").

Here, there is evidence in the record that plaintiff is able to ambulate with a single point cane, which does not limit the functioning of both upper extremities. (See AT 779, 783, 793, 1101.) Plaintiff has also reported to his physicians that "[w]ith the use of his cane, he feels more stable, when ambulating." (AT 1005.) Additionally, plaintiff testified at the hearing that he does not use the cane to ambulate at home. (AT 61.)

Therefore, plaintiff has failed to meet his burden to prove that his right ankle injury has resulted in an inability to ambulate effectively, and substantial evidence supports the ALJ's step three determination. See 20 C.F.R. § Pt. 404, Subpt. P, App. 1; Burch, 400 F.3d at 683; Hedglin, 2011 WL 2462222 at *6.

V. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 12) is DENIED.
2. The Commissioner's cross-motion for summary judgment (ECF No. 13) is GRANTED.
3. The final decision of the Commissioner is AFFIRMED, and judgment is entered for the Commissioner.
4. The Clerk of Court is ordered to close this case.

IT IS SO ORDERED.

Dated: August 29, 2017

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE